2020 IL App (2d) 200487-U
No. 2-20-0487
Order filed September 10, 2020

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| MICHAEL VITE, | ) | Appeal from the Circuit Court |
| | ) | of Kane County. |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 20-CH-306 |
| | ) | |
| FRED VARGASON, ST. CHARLES | ) | |
| INVESTMENTS, LLC, NISSAN OF ST. | ) | |
| CHARLES INSURANCE AGENCY, LLC, | ) | |
| MILL CREEK INVESTMENTS, INC., | ) | |
| ROYAL HAWK REINSURANCE | ) | |
| COMPANY, CKD INVESTMENT, INC., and | ) | |
| POLSINELLI, P.C., | ) | |
| | ) | |
| Defendants | ) | |
| | ) | Honorable |
| (Michael Vite, Plaintiff-Appellee v. Fred | ) | Kevin T. Busch, |
| Vargason, Defendant-Appellant). | ) | Judge, Presiding. |

JUSTICE ZENOFF delivered the judgment of the court.
Justices Hutchinson and Bridges concurred in the judgment.

**ORDER**

¶ 1    *Held*: The appellate court dismissed the appeal for lack of jurisdiction where the appellant failed to file a timely notice of appeal and supporting documents as required by Supreme Court Rule 307(d).

¶ 2    Defendant, Fred Vargason, appeals an order granting a temporary restraining order (TRO) prohibiting him and others from transferring, or otherwise disposing of, assets of a business in which Vargason was the principal shareholder and director. For the following reasons, we dismiss this appeal for lack of appellate jurisdiction.

¶ 3                                I. BACKGROUND

¶ 4                              A. The Indebtedness

¶ 5    Vargason was the president and controlling shareholder of St. Charles Pontiac, Inc., d/b/a Nissan of St. Charles, a car dealership (dealership). Plaintiff, Michael Vite, was the dealership's general manager. In October 2014, the dealership financed its inventory through NextGear Capital, Inc. (lender) by executing a promissory note in the amount of $13 million. The dealership, Vargason, an entity known as St. Charles Investments, LLC (SCI), and plaintiff then entered into an agreement with the lender under which they became jointly and severally liable for the payment of the indebtedness to the lender.[1]

¶ 6    On July 25, 2017, plaintiff, Vargason, the dealership, SCI, Nissan of St. Charles Insurance Agency, LLC, Mill Creek Investments, Inc., and Royal Hawk Reinsurance Company entered into an "ancillary agreement" to establish seniority as between the dealership, SCI, Vargason, and plaintiff with respect to the payment of the indebtedness to the lender. Under the ancillary agreement, the parties held plaintiff harmless "should he ever make any payment of the indebtedness" to the lender. The ancillary agreement further provided that the dealership would make a payment of $300,000 to the lender. Payment of the accrued indebtedness then would be

_____

[1] This document is not part of the supporting record but is referenced in another document which is included in the supporting record.

made by the following entities in the following order: (1) the dealership, (2) SCI, in the event that the dealership was unable to make payments, (3) Vargason, in the event that SCI and the dealership were unable to make payments, and (4) plaintiff, in the event that SCI, the dealership, and Vargason were unable to make payments. The ancillary agreement also required plaintiff to execute a personal guaranty of the entire indebtedness.

¶ 7    On March 6, 2018, plaintiff signed an "individual guaranty," guaranteeing payment of the dealership's note to the lender. The guaranty contained an arbitration clause, requiring plaintiff to arbitrate "any disputes," using the Judicial Arbitration and Mediation Service (JAMS). The arbitration clause provided that it was to be broadly construed and included "all disputes, claims, and counterclaims arising out of" (1) the guaranty or "any aspect" of the guarantor's past, present, or future relationship with the lender, (2) all disputes, claims, and counterclaims that arose prior to the guaranty or the contract between the guarantor and the lender, and (3) any disputes, claims, or counterclaims that arise after the guaranty.

¶ 8    The dealership, Vargason, and SCI defaulted on the indebtedness. On March 2, 2020, the lender assigned the note, indebtedness, and plaintiff's individual guaranty to CKD Investment Inc. (CKD). On March 5, 2020, CKD filed a demand for arbitration under plaintiff's personal guaranty in the amount of $11 million. Plaintiff made a demand on Vargason's attorneys, the Polsinelli firm (Polsinelli), for enforcement of the ancillary agreement. According to plaintiff, Polsinelli did not respond to the demand.

¶ 9                    B. Plaintiff's Lawsuits

¶ 10                    1. *The 2019 Lawsuit*

¶ 11    In December 2019, plaintiff sued Vargason and the dealership in a one-count complaint alleging breach of fiduciary duty. Essentially, plaintiff alleged that the dealership became insolvent

and Vargason held its assets in trust for the benefit of the dealership's creditors, of which plaintiff was one. Plaintiff alleged that Vargason breached his fiduciary duty to the creditors by committing a series of self-dealings and frauds. The court issued a TRO prohibiting Vargason and the dealership from disposing of, or converting, any assets belonging to the dealership existing within Illinois and from removing any dealership assets from Illinois.

¶ 12                                    2. *The 2020 Lawsuit*

¶ 13    On August 20, 2020, plaintiff sued the parties to the ancillary agreement for breach of that agreement. Plaintiff also requested a declaration of his rights under the ancillary agreement. Additionally, plaintiff named Polsinelli as a defendant. Plaintiff sought disqualification of Polsinelli and its employee-attorneys from representing CKD in the arbitration action because they will be necessary witnesses and because of conflicts of interest. Plaintiff also alleged that Vargason, as the alter ego of CKD, brought the arbitration to force plaintiff to dismiss the first lawsuit. Plaintiff further sought to enjoin the arbitration until Vargason paid plaintiff's fees and costs in connection with the arbitration and until the court declared that CKD was a "sham" corporation.

¶ 14                                    3. *The Second TRO*

¶ 15    Plaintiff filed a "Verified Motion for Temporary Restraining Order, Appointment of a Receiver, and Other Relief." Plaintiff alleged that this motion largely mirrored the reasons for the injunction in the first lawsuit. The basis for injunctive relief was alleged to be SCI's intention to "secrete [*sic*] and dissipate" the dealership's assets. Plaintiff asserted that SCI is controlled by Vargason. Plaintiff specifically alleged that Vargason paid a $100,000 retainer to Polsinelli and a

$255,000 "escrow" to Attorney Mark Lyman and his firm,[2] which were funds rightfully owed to the dealership's creditors. Plaintiff alleged that Vargason sold certain real estate and relocated to North Carolina in violation of the first TRO.

¶ 16    At the hearing on the motion for the second TRO, the court initially opined that plaintiff has an adequate remedy at law, which is to litigate the ancillary agreement in the arbitration proceeding. After further argument of counsel, the court changed its mind and ruled that plaintiff could not litigate the ancillary agreement at arbitration because the other parties to that agreement were not parties to the arbitration.

¶ 17    The court issued the TRO on Friday, August 28, 2020 at 2:50 p.m. The typewritten order recited that plaintiff showed (1) a clearly ascertainable right in need of protection, (2) there is a "fair question" that plaintiff will succeed on the merits, (3) plaintiff will suffer irreparable harm, (4) plaintiff does not have an adequate remedy at law, and (5) good cause for excusing a bond. Accordingly, the court enjoined each of the defendants from "selling, assigning, transferring, conveying, pledging, or encumbering (including by abandonment or transfer of custody or possession or control) any assets or property in their possession or control and from removing any assets or property from the State of Illinois." The court made all assets or property owned by the defendants, or owed to them, that are in the possession or control of the lawyers, including the retainers and the escrow in Lyman's possession, subject to the TRO.

¶ 18    Vargason filed a notice of interlocutory appeal, supporting record, petition for review of the TRO, and supporting memorandum on Tuesday, September 1, 2020.

¶ 19                              II. ANALYSIS

---

[2] Lyman and his firm are not parties to the litigation.

¶ 20    Plaintiff contends that we lack jurisdiction to hear this appeal. We agree.

¶ 21    Illinois Supreme Court Rule 307(d) (eff. Nov. 1, 2017), governs appeals of TROs. *McHenry County Sheriff v. McHenry County Department of Health*, 2020 IL App (2d) 200339, ¶ 20. Pursuant to Rule 307(d), the notice of interlocutory appeal is due to be filed, both in the trial court and this court, "within two days of the entry or denial of the order from which review is being sought." The rule further provides that the appellant's petition, supporting record, and memorandum supporting the petition shall be filed in the appellate court within two days of the trial court's order. Ill. S. Ct. R. 307(d). It is well settled that jurisdiction is vested in the appellate court only when a party timely files a notice of appeal. *Multiut Corp. v. Draiman*, 359 Ill. App. 3d 527, 543 (2005).

¶ 22    Here, the court's order granting the TRO is clearly dated August 28, 2020. That date appears just above the judge's signature. The order was entered on a Friday. Two days hence was a Sunday. The time within which any act provided by law is to be done is computed by excluding the first day and including the last, unless the last day is Saturday or Sunday or a holiday, and then it is also excluded. 5 ILCS 70/1.11 (West 2018). Consequently, Vargason's notice of appeal was due on Monday, August 31, 2020.

¶ 23    The record shows that Vargason electronically filed his notice of appeal in the trial court on Tuesday, September 1, 2020, at 12:18 a.m. Vargason electronically filed the notice of appeal, supporting record, petition, and memorandum in this court on September 1, 2020, at 12:11 a.m. Illinois Supreme Court Rule 9 (eff. Aug. 14, 2020) governs the electronic filing of documents in civil cases. Rule 9(d) provides that a document is timely filed if it is submitted "*before midnight* (in the court's time zone) on or before the date on which the document is due." (Emphasis added). Ill. S. Ct. R. 9(d). Our Local Rule 101(b) requires that materials electronically filed in the Second

District adhere to Supreme Court Rule 9. Supreme Court Rules are not mere suggestions but are compulsory. *U.S. Bank Trust National Ass'n. v. Junior*, 2016 IL App (1st) 152109, ¶ 17. Here, because Vargason filed the notice of appeal and other necessary documents *after* the date that they were due, this court lacks jurisdiction. In the absence of a timely filed notice of appeal, we must dismiss the appeal. *Huber v. American Accounting Ass'n.*, 2014 IL 117293, ¶ 8. Accordingly, this appeal is dismissed.

¶ 24    Appeal dismissed.