2023 IL App (2d) 220147-U
No. 2-22-0147
Order filed February 15, 2023

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(l).

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_____

| | | |
|---|---|---|
| MICHAEL VITE, | ) | Appeal from the Circuit Court |
| | ) | of Kane County. |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 19-CH-932 |
| | ) | |
| FRED VARGASON and ST. CHARLES | ) | |
| PONTIAC, INC., d/b/a Nissan of St. Charles, | ) | |
| | ) | |
| Defendants | ) | Honorable |
| | ) | Kevin T. Busch, |
| (Fred Vargason, Defendant-Appellant). | ) | Judge, Presiding. |

_____

| | | |
|---|---|---|
| MICHAEL VITE, | ) | Appeal from the Circuit Court |
| | ) | of Kane County |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 20-CH-306 |
| | ) | |
| FRED VARGASON; ST. CHARLES | ) | |
| INVESTMENTS, LLC; NISSAN OF ST. | ) | |
| CHARLES INSURANCE AGENCY, LLC; | ) | |
| MILL CREEK INVESTMENTS, INC.; | ) | |
| ROYAL HAWK REINSURANCE | ) | |
| COMPANY; CKD INVESTMENT, INC.; | ) | |
| and POLSINELLI, P.C., | ) | |
| | ) | |
| Defendants | ) | Honorable |
| | ) | Kevin T. Busch |
| (Fred Vargason, Defendant-Appellant). | ) | Judge, Presiding. |

_____

JUSTICE JORGENSEN delivered the judgment of the court.
Presiding Justice McLaren and Justice Hutchinson concurred in the judgment.

**ORDER**

¶ 1    *Held*:   Trial court's contempt order is affirmed.

¶ 2    Defendant, Fred Vargason, appeals from the circuit court's order holding him in indirect civil contempt based on his violation of a receivership order that was entered in relation to Vargason's property, assets, and estate and several entities in which Vargason had an interest, including St. Charles Pontiac, Inc., doing business as Nissan of St. Charles (dealership).   We affirm.

¶ 3                                  I. BACKGROUND

¶ 4                A. Receivership Order, Wage Claim, and Motion to Reconsider

¶ 5    This is the third interlocutory appeal in this case, which involves two separate actions, case Nos. 19-CH-932 (filed December 11, 2019) (2019 case) and 20-CH-306 (filed August 20, 2020) (2020 case), that have been consolidated for discovery in the circuit court.   See *Vite v. Vargason*, 2020 IL App (2d) 200487-U (dismissing Vargason's appeal from a temporary restraining order); and *Vite v. Vargason*, 2022 IL App (2d) 220143 (dismissing Vargason's appeal from an order denying his motion to modify the receivership order).   The actions were initiated by plaintiff, Michael Vite, against Vargason; the dealership; St. Charles Investments, LLC; Mill Creek Investments, Inc.; Royal Hawk Reinsurance Company; CKD Investment, Inc.; and Polsinelli, P.C. In the 2019 case, Vite, who was the dealership's general manager, alleged in part that he had made a "commissions loan" to the dealership, which was owned by Vargason. The commissions loan consisted of deferred commissions to which Vite was entitled.   He asserted, among other claims,

a breach-of-contract claim based on the dealership's failure to repay the commissions loan and sought money damages.

¶ 6       Before filing those actions, however, in April 2019, Vite filed a wage claim with the Illinois Department of Labor (Department) under the Illinois Wage Payment and Collection Act (Act) (820 ILCS 115/1 *et seq.* (West 2018)). The wage claim was duplicative of the breach-of-contract claim, in that it sought payment of the unpaid commissions.

¶ 7       On December 13, 2019, the circuit court entered a temporary restraining order in the 2019 case. The order enjoined Vargason and the dealer from "disposing, converting, secreting, etc., any assets belonging to [the dealership] and existing within the State of Illinois and shall not remove any such assets from the State of Illinois." On January 30, 2020, St. Charles Investments, LLC, which owned the property on which the dealership operated and was controlled by Vargason but was not a party to the 2019 case, closed on the sale of the property to a third party. As a result of the sale, on October 7, 2020, the circuit court determined that Vargason had violated the temporary restraining order and held him in indirect civil contempt.

¶ 8       On October 13, 2020, the circuit court appointed Thomas Springer as receiver for all defendants in both actions (the receivership defendants),[1] except Polsinelli, P.C., a law firm that represented Vargason, and entered a written order detailing the scope of the appointment. In pertinent part, the order stated as follows:

---

[1]The receivership applied to Vargason's "property, assets, and estate, [but] **not** his person." (Emphasis in original.)

"2. Except as herein provided, [Springer] is hereby authorized to, and shall, without further order, authorization, or direction of the Court, take all reasonable and necessary action to:

\* \* \*

(b) Investigate, discover, and, subject to final Court approval, negotiate and compromise or fully discharge, the Receivership Defendants' debts, obligations, or other liabilities;

\* \* \*

(d) Prosecute or defend any actions, suits, claims, or other proceedings before any \*\*\* administrative body \*\*\* on behalf and in the name of, *ex relatione*, the Receivership Defendants (the [']Receivership Defendants Litigation[']) and, subject to the Court's final approval, settle, compromise, dismiss, or non-suit the same;

(1) Notwithstanding sub-paragraph (d) or anything else contained in this Order, *the Receiver shall have no rights, powers, authorities, duties, responsibilities, or obligations with respect to any defense of Fred Vargason, individually or personally.*"   (Emphasis added.)

The order also stated as follows:

"Fred Vargason, and each of his and the other Receivership Defendants' employees and agents, are hereby terminated as employees and agents of the Receivership Defendants, and *shall immediately cease acting as an employee or agent of the Receivership Defendants*, including as a shareholder, member, owner, director, managing member, officer, [']independent contractor['], other employee or agent of any and all of the

Receivership Defendants. *Additionally, Fred Vargason shall not attempt to exercise any corporate governance or management control over the Receivership Defendants.*" (Emphases added.)

Finally, the order provided that "[a]ny person subject to or with notice of this [o]rder and who violates this [o]rder or attempts to or does hinder, interfere with, obstruct, or frustrate the Receiver in carrying out his powers and duties may be held in contempt."

¶ 9 On September 9, 2021, Springer sent a notice of receivership to all potential creditors of the receivership defendants. The notice included instructions on how to file a claim, and it set a claims deadline of October 15, 2021. Despite receiving this notice, Vite did not inform Springer that the wage claim was currently pending before the Department and that a hearing had been set for October 28, 2021.

¶ 10 On October 28, 2021, an administrative law judge (ALJ) held a hearing on Vite's wage claim. Vite, his attorney, and a witness appeared, but neither Vargason nor a representative of the dealership appeared. Vite did not inform the ALJ of the receivership order's existence, or more specifically, that Vargason was prohibited from acting as the dealership's representative and that Springer, as receiver, was the dealership's representative. The ALJ purportedly tried to telephone Vargason, to no avail.

¶ 11 On December 6, 2021, the ALJ entered an order, finding in Vite's favor and setting forth the basis for his decision. The ALJ noted that Vargason and the dealership had been properly served with notice of the hearing but did not appear. The ALJ also noted that he nevertheless heard and received evidence and entered an order based on that evidence. See 56 Ill. Admin. Code § 300.1150(b) (2014) (when an employer fails to appear at hearing, the ALJ shall issue a decision "based on the evidence introduced and the evidence of the record"). Applying the

required burden shifting approach (56 Ill. Admin. Code § 300.1070 (2014)), the ALJ found Vite "met his initial burden of creating a reasonable inference of the amount of commissions owed by respondent" and that respondent (presumably the dealership) "failed to refute any of the evidence, inferences of the claimant." The ALJ also imposed personal liability upon Vargason, finding the evidence established that Vargason was the owner, president, and day-to-day operator of the dealership and "made the decision to not pay [Vite] the monies owed in violation of the Act." See 820 ILCS 115/2 (West 2018); 56 Ill. Admin. Code § 300.620 (2014) (providing for personal liability of corporate officers for wages and final compensation).

¶ 12    On December 13, 2021, in the form of a one-page letter transmitted via two email addresses, including fred@nissanofstcharles.net, Vargason filed with the Department a *pro se* motion to reconsider. In the motion, Vargason asserted that, although "we" received a notice dated October 20, 2021, "we" received no notice of the date and time of the hearing, and now "we" received notice of a decision that occurred on October 28, 2021. Vargason then stated, "I had no notice *** and was found in default by not showing up to defend *the company*." (Emphasis added.) According to Vargason, the October 20, 2021, notice was sent to an old North Carolina address, even though, since August, Vite and his counsel had a copy of "our" new address. Vargason asserted that he and the ALJ "had other hearings over the last year, and [the ALJ knew] I always am available to defend *the company*." (Emphasis added.) He concluded the motion by requesting the Department to "set aside this decision and reschedule a new hearing so I may attend and defend *our company position*." (Emphasis added.)

¶ 13    On December 20, 2021, the Department's chief ALJ set aside the decision, reopened the matter for additional hearing, and provided that a notice of hearing would be forthcoming under separate cover.

¶ 14                    B. Rule to Show Cause and Contempt Hearing

¶ 15    On December 29, 2021, Vite petitioned for a rule to show cause against Vargason.[2]  Vite alleged that, in addition to sending the motion to reconsider, Vargason had "obtained control over the domain name nissanofstcharles.net and [was] using the email address fred@nissanofstcharles.net to misrepresent his authority on behalf of Nissan of St. Charles." Thus, Vite contended, Vargason continued to represent that he had the authority to act on behalf of the dealership, which was in direct conflict with the receivership order's provisions that terminated Vargason's authority and precluded him from exercising "any corporate governance or management control over the receivership defendants."   Vite sought an order holding Vargason in contempt, ordering him to immediately withdraw the motion to reconsider "as void *ab initio* as the same was procured under false authority," awarding Vite attorney fees, and ordering Vargason to pay a fine or incarcerating him until he purged himself of the contempt.

¶ 16    Vargason responded to the petition, arguing, in sum, that his motion to reconsider was sent to the Department because he had not received notice of the hearing, the decision imposed upon him individual liability, and he wished to defend himself in his personal capacity.   He asserted that the motion to reconsider did not violate the receivership order, as the order expressly provided that Springer had no obligation or authority to defend Vargason personally.   Finally, Vargason asserted that his reference to the "company" in his motion to reconsider might have been "inartful," but that "mistakes in pleadings do not merit contempt proceedings."

¶ 17    On February 9, 2022, the circuit court issued a rule to show cause and ordered Vargason to appear on March 30, 2022, to demonstrate why he should not be held in contempt.

---

[2]The petition was filed but not heard on an emergency basis.

¶ 18    In the meantime, on February 18, 2022, Vargason filed a "Motion for Leave to Represent Corporation Before the Department of Labor."    In the motion, Vargason asked the circuit court to modify the receivership order, specifically, by granting him the authority to defend the dealership in the proceedings before the Department and requiring Springer to cooperate with him in preparing and presenting such defense.    He asserted Springer had denied any prior knowledge of the wage claim and, even after learning of it, refused to defend the dealership. Vargason "believe[d] there [was] a good defense to the [w]age [c]laim that [Springer] was failing to assert," and, because Vargason was subject to personal liability for the claim, he would be prejudiced by Springer's failure to defend the claim on the dealership's behalf.    In sum, Vargason asserted that, if the dealership did not present a defense, it would again be found in default and personal liability would flow to him.    As such, he wished to represent the dealership because he could not defend himself without also defending the dealership, and Springer did not intend to defend the dealership.

¶ 19    At the March 30, 2022, hearing, Vargason testified that he did not receive notice of Vite's wage claim or the hearing on it.    Nor did he receive a phone call from the ALJ on the date of the hearing.    Vargason first learned of the claim when he received the Department's decision.    To that point, the Department had been sending notices to an address in North Carolina, where he lived until August 2021, when he moved to Iowa. The decision "scared [Vargason] to death," because it imposed on him personal liability for the entire claim. Thus, he sent the motion to reconsider. At the time, Vargason did not know that the Department was unaware of the receivership order.    Vargason understood the wage claim to be duplicative of the commissions loan claim in the 2019 case.

¶ 20    On cross-examination, Vargason acknowledged that he used the email address fred@nissanofstcharles.net in 2020 and 2021, and that he sent the motion to reconsider from that

email address. At the time, he also used a Gmail account, vargasonfred@gmail.com. Vargason testified that fred@nissanofstcharles.net was a personal email address.

¶ 21　Vargason testified he had several wage claims pending against him in the Department. He denied that, in September 2019, attorney Steve Varhola filed an appearance on his behalf in relation to Vite's claim. However, he acknowledged that, on April 23, 2021, he was copied on an email in which Varhola withdrew his appearance on Vite's and 11 other wage claims. He also acknowledged that, at that time, the receivership order was in effect. He did not notify the Department about the receivership order. After Varhola withdrew his appearance, Vargason did not notify the Department to use an email other than fred@nissanofstcharles.net, nor did he notify the Department of his relocation to Iowa. Before filing his motion to reconsider with the Department, Vargason did not contact Springer or the court. Vargason testified that he did not request permission from the receiver or court because he filed the motion on a personal basis.

¶ 22　Vargason testified that his original business email address was fred@nissanofstcharles.com. He did not use that address to email the Department.

¶ 23　Vite testified that, although, in the Department wage claim, he is seeking $711,041.62 in unpaid commissions, those are not the same wages that he is seeking in his circuit court complaint. After Vite's relevance objection, Vargason's counsel noted that the relevance is that Vite cannot double recover and is required to inform the Department that he is seeking the same wages in both the wage claim and circuit court. The trial court sustained the objection and noted that neither the actions Vite should take, nor Vargason's defenses to the wage claim, were currently the issue before it. Vite was present at the Department's wage hearing; he could not recall whether the ALJ attempted to reach Vargason.

¶ 24    In his closing statement, Vargason's counsel reiterated for the court that Vargason filed the motion to reconsider simply as a means of reopening the wage claim for an opportunity to appear:

"All Mr. Vargason has done so far with respect to this claim is to ask, I'll give you perhaps inartfully, for an opportunity to appear and defend.    The fact that at that hearing it will necessarily involve a defense of some of the claims against the company arises by virtue of the fact that the Wage and Payment Act imposes that individual liability on him. He would be handcuffed today if he were not able to present some defense with respect to the claims.

*** 

And I will represent to your Honor—and obviously because we have filed a motion, Mr. Vargason certainly is not going to appear before the Department of Labor and try to defend the company or represent that he's doing that without your Honor's permission. But I will suggest to you that there's absolutely no way to defend this claim without somebody appearing on behalf of the company.    And otherwise what happens is it results in a default for Mr. Vargason and he's entitled to defend himself."

¶ 25    In response, Vite did not dispute that Vargason had a right to defend himself personally in the wage claim. Upon court questioning, Vite's counsel provided theoretical arguments that Vargason could raise for himself without defending the company.    Further, counsel represented to the court that, at one point, Vargason had been represented by counsel before the Department and had argued that Vite was seeking double recovery in both the wage claim and circuit court, but the Department had rejected that argument.

¶ 26    In conclusion, Vargason noted that he simply received notice of a hearing and that no one showed up and he did not know why.    His counsel reiterated that Vargason was not trying to

willfully violate the receivership order; rather, he wanted the opportunity to appear. "What [Vite is] trying to do, I think, is in part restrain him from ever appearing before the Department of Labor."

¶ 27                                      C. Contempt Finding

¶ 28     On April 1, 2022, the circuit court found Vargason in contempt and also denied his motion to modify the receivership order.[3]  In announcing its ruling, the court noted that, with respect to defending himself personally, but not raising arguments on behalf of the dealership, Vargason was in "a difficult situation."   But the court noted that Vargason was not new to the courtroom, had previously been found in contempt, which had precipitated the court's appointment of a receiver, as well as a stay of arbitration proceedings which it had deemed to be a coercive and abusive use of process by Vargason.   The court continued,

    "This [c]ourt made it crystal clear to Mr. Vargason that he was not in any way to defy the [c]ourt's order; both the injunction that was originally entered and the receivership order.   Both of them precluded him from acting on behalf of [the dealership], which he clearly did.   He sends them emails from fred@nissanofstcharles.   Characterizing it as my private email does not in any was lessen the impact it has on the Department of Labor administrative law judge who knows that email to belong to the company."

¶ 29     The court continued that Vargason's commentary in the motion to reconsider clearly stated that the was defending the company, wanted an opportunity to come in and defend "our company

_____

    [3]Vargason filed a separate appeal from the order denying his motion, which was docketed in this court as appeal No. 2-22-0143. We dismissed that appeal for lack of jurisdiction. *Vite v. Vargason*, 2022 IL App (2d) 220143.

position," and that he had admitted in his testimony that he was defending the company in 2021. It noted that "Mr. Vargason was well aware that his obligation was to come here before the fact, not after the fact" and, with respect to Vargason's comment in the motion to reconsider that he was always available to defend the company, it stated, "No, Mr. Vargason, you are not. That's why I appointed a receiver because I've been trying to corral in your activity, which from the very beginning of this case has been what I would describe as fast and loose." The court found that Vargason willfully violated the court's receivership order.

¶ 30    In the written contempt order, the court found that Vargason lacked authority to send the Department a motion to reconsider, and he lacked authority to represent the dealership before the Department. Nevertheless, in his motion to reconsider, Vargason had repeatedly purported to represent and sought to defend the dealership, without legal or justifiable excuse and in willful and contumacious violation of paragraphs 7 and 14 of the receivership order. The written contempt order further required Vargason to take various actions to purge the contempt, including to inform the Department by letter that he was and is not authorized to represent the interests of the dealership and "was without authority to send" the motion for reconsideration. Further, the order provided that Vargason was immediately enjoined and barred from using the email address fred@nissanofstcharles.net, accessing or utilizing that address, deleting, altering, or modifying any contents of that account, and that he was to immediately turn over all credentials and login information for that email account.

¶ 31    On May 2, 2022, Vargason timely filed a notice of appeal. In the notice, he identified the order appealed from as the April 1, 2022, order finding him in contempt, and he asked this court to reverse that order.

¶ 32                                II. ANALYSIS

¶ 33                                      A. Lack of Appellee's Brief

¶ 34    Preliminarily, we note that Vite has elected not to file an appellee's brief.    Therefore, our review is guided by the principles set forth in *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128 (1976).    Under *Talandis*, when an appellee does not file a brief, the appellant is not automatically entitled to a reversal, because "[a] considered judgment of the [circuit] court should not be set aside without some consideration of the merits of the appeal." *Id.* at 131.    Instead, if we determine justice so requires or if the record is simple and the issues can be easily decided, we have discretion to decide the merits of the case.    *Id.* at 133.    Here, although the record is quite voluminous, the portions concerning the issues on appeal are relatively straightforward, such that the appeal can easily be decided without the aid of an appellee's brief. Accordingly, we choose to address the merits of Vargason's appeal, notwithstanding the absence of an appellee's brief.

¶ 35                                      B. Contempt Finding

¶ 36    Vargason argues on appeal that the circuit court abused its discretion by finding him in contempt, because there was no evidence that his conduct was calculated to embarrass, hinder, or obstruct the court in its administration of justice or to lessen its dignity or authority.    Specifically, he argues first that he was merely trying to reopen the Department's case, after he had not received notice of the hearing and where it resulted in a decision imposing upon him substantial personal liability.    Second, he argues that the motion to reconsider did not hinder the receiver from exercising his duties, because the receiver had not appeared before the Department and had no intention of doing so.    Third, Vargason asserts that the court abused its discretion, where it orally recognized the problem Vargason had faced, yet still found him in contempt.    Fourth, he argues that the court's ruling precludes him from defending himself in the wage claim.    Finally,

Vargason contends that his use of the email address fred@nissanofstcharles.net could not have violated the receivership order, because that order did not explicitly prohibit his use of that email address. For the following reasons, we reject Vargason's arguments.

¶ 37 "Vital to the administration of justice is the inherent power of courts to compel compliance with their orders." *Sanders v. Shephard*, 163 Ill. 2d 534, 540 (1994). A party may be held in civil contempt for willfully failing to comply with a court order. *In re Marriage of Harnack & Fanady*, 2022 IL App (1st) 210143, ¶ 46. Once the party bringing the contempt petition establishes a *prima facie* case reflecting disobedience of a court order, the burden shifts to the alleged contemnor to prove that the failure to comply was not willful or contumacious and that there exists a valid excuse. *Id.* Whether a party is guilty of contempt is a question of fact to be resolved by the circuit court, and its resolution of the issue will not be disturbed on appeal unless it is against the manifest weight of the evidence or the record reflects an abuse of discretion. *Id.* ¶ 47; see also *In re Marriage of Logston*, 103 Ill. 2d 266, 287 (1984).

¶ 38 Here, Vargason concedes that he prepared and sent the motion to reconsider, such that the court's finding in that regard is not against the manifest weight of the evidence. However, he argues that, by finding him in contempt for doing so, the court abused its discretion. A court abuses its discretion only where its ruling is unreasonable. See, *e.g.*, *In re B.S.*, 2022 IL App (2d) 220271, ¶ 32. As noted, Vargason raises five overarching reasons that he believes the court's contempt finding was an abuse of discretion, yet we find none of those reasons render the contempt finding unreasonable.

¶ 39 First, Vargason asserts that he was merely trying to reopen a case of which he had no notice, and which had resulted in substantial personal liability. He explains that he was "scared to death" when he received the decision, finding himself and the dealership liable for around $711,000 in

unpaid wages, and he notes that, under the Act, an officer of an employer is deemed to be an "employer" and personally liable for unpaid wages. See, *e.g.*, 820 ILCS 115/13 (West 2020). In addition, he contends that he has a potential defense to the wage claim, as Vite may not seek double recovery in two jurisdictions. Vargason argues that there is no evidence in the record that he was trying to embarrass, hinder, or obstruct the circuit court, he was simply doing the best he could under the circumstances, requested only that he be afforded an opportunity to appear at a hearing, and "while perhaps inartful by mentioning 'the company,' [the motion to reconsider] was sent on his own behalf in an effort to protect himself from that liability." Indeed, he represents that the fact that the dealership was mentioned in the letter "was superfluous or *de minimus* at best."

¶ 40    We reject Vargason's characterization of his actions, as they ignore the context preceding them, as well as minimize the representations he made in the motion and the avenues by which he transmitted it. As the trial court noted, Vargason was not an innocent "babe in the woods;" he had already been found in contempt for actions representing the dealership and those actions precipitated the court's receivership appointment and a stay of arbitration proceedings. The trial court was not unreasonable in finding that Vargason's motion to reconsider did not simply "inartfully" mention the company. Indeed, in his motion, Vargason *repeatedly* used the pronoun "we," and not only referenced the company three times, he also expressly represented that he "always [is] available to defend the company" and requested an opportunity to appear and "defend *our company* position." Moreover, Vargason used two email addresses to send the motion to the Department: a personal Gmail account and one designed to appear linked to the dealership that would, as the trial court reasonably found, suggest to any objective observer that Vargason remained in a position with the dealership with authority to speak on its behalf.

¶ 41    Although the receivership order made clear that Vargason retained the right to defend himself personally, the court's finding that the motion to reconsider did not convey that desire is supported by the record.    As such, the court's finding that Vargason's actions served to disobey and thwart the receivership order's provisions that he not act as an employee or agent, or attempt to exercise any control over the dealership, or hinder, interfere with, obstruct, or frustrate the receiver in carrying out his powers and duties, was not unreasonable.    We also note that we reject Vargason's contention that his actions only requested a hearing and expressed his availability to defend the company, resulting in no prejudice to the receivership estate, whereas he agrees the situation would be different if he had actually attempted to defend the dealership at a hearing on the merits.    In fact, the record reflects that, when he wrote the motion, Vargason did not yet *know* the status of the receiver's notice of or position on the wage claim and whether or not he had a rationale for not defending it.    Accordingly, the court reasonably found that, without first contacting the receiver or even the court, Vargason simply stepped into the receiver's shoes by writing the Department and requesting an opportunity to appear at a hearing to defend the company.

¶ 42    Second, and in relation to the last point above, Vargason argues that the motion to reconsider did not hinder the receiver from exercising his duties, because the receiver had not received notice of the wage claim, had consequently not appeared to defend the dealership, and, when notified of the claim, represented that he had no intention of expending resources to do so. Vargason asserts that the court never explained how his motion to reconsider, seeking only to reopen the wage claim, affected the receiver's ability to do his job, particularly given that the receiver did nothing but "lay down."    Effectively, Vargason contends, the court has decided that, even though the receiver will not defend the company, exposing Vargason to substantial personal

liability, Vargason *also* cannot do so and will be found in contempt for trying. We disagree. In sum, Vargason conflates two issues: his ability to represent and defend the company and his ability represent himself personally. While the two may, on the merits, involve overlapping themes, the receiver's decision to not defend the wage claim, given insufficient funds in the estate to pay superior claims and liens, is within his authority, *not Vargason's*. Vargason's motion to reconsider, seeking a hearing to defend the company's position, served to thwart the receiver's authority to make those discretionary decisions. The court was fully apprised of Vargason's position and arguments on this point and reasonably rejected them.

¶ 43    Third, Vargason asserts that the court abused its discretion, where it orally recognized the problem Vargason had faced yet found him in contempt anyway. He notes that the court recognized that Vargason had been found individually liable, but had no viable way of contesting the individual liability without possibly presenting the defenses the receiver chose not to present on the company's behalf. Again, we disagree. There is nothing arbitrary about the court's recognition that, substantively, there would ultimately be a fine line between defenses that applied to the dealership and to Vargason personally, but recognizing that the actions Vargason took and the manner in which he took them willfully violated the court's receivership order. As the court noted, the fact that the issue was complicated and that there existed a court order prohibiting Vargason from taking certain actions meant, if anything, Vargason could have sought guidance from the receiver and/or the court, as opposed to simply acting independently. Vargason argues that the court's position that he should have asked for permission, rather than forgiveness, as he had previously been found in contempt for violating the initial injunction, punishes Vargason for prior conduct, rather than seeking to enforce compliance with the receivership order. Again, we disagree. The relevance of the court's position concerning asking permission and the prior

contempt finding is not one contemplating additional punishment for past behavior but, rather, it speaks to the *context* supporting the intent and willfulness of Vargason's most *recent* behavior. Vargason asserts that the court's demand that he should have asked permission first was an unjust condition, as he was "merely making an effort to afford everyone an opportunity to appear at a hearing before substantial liability was imposed." However, the court did not find credible Vargason's characterization of his actions and, given the context of past proceedings, as well as the language of the motion itself, that finding was not unreasonable.

¶ 44 Fourth, Vargason argues that the court's ruling precludes him from defending himself in the wage claim. He notes that the receivership order expressly provided that the scope of the receiver's powers could not affect Vargason's ability to defend himself, so the court's contempt ruling is arbitrary and an abuse of discretion because it effectively renders that provision of the order meaningless. The court's contempt order, Vargason argues, serves to "kneecap" his defense to the wage claim by prohibiting him from even mentioning the company in his papers. Once again, we disagree with Vargason's characterization of the court's contempt finding and his motion to reconsider. The court's order did not "kneecap" Vargason or render meaningless the provision that Vargason could defend himself personally. Rather, the court found that Vargason's motion to reconsider went *beyond* defending himself personally, tried to represent the dealership, and did not simply mention the company. The court's findings were not unreasonable, as Vargason did not, for example, ask the Department in the motion to appear to defend himself personally; he *only* mentioned being available to represent and defend the company. Vargason also contends that Vite sought to use the court's contempt power to prevent him from challenging Vite's improper windfall in another forum by challenging "on the flimsiest of bases" an inartfully-drafted motion and Vargason's attempt to defend himself. Citing foreign

authority, Vargason argues that this sort of "gotcha" use of contempt proceedings should be rejected. As we disagree, once again, with Vargason's characterization of the motion, we also reject this argument. The court reasonably disagreed with Vargason's argument that Vite was simply trying to use contempt as a mechanism for preventing Vargason from appearing before the Department.

¶ 45 Finally, Vargason contends that, with respect to his use of the email address fred@nissanofstcharles.net, he could not have violated the receivership order, because it did not explicitly prohibit his use of that email address. He asserts that the receivership order, while prohibiting him from acting as an employee or agent of the receivership defendants, did not prohibit him from any and all uses of the email address, nor require him to turn over all logins and access to the email address or remove him as an "owner" of the business. Vargason notes that the receivership order did not give the receiver power to control the use of email addresses used by Vargason, and, "while it may have been theoretically possible to include the e-mail address among the prohibitions imposed by the receivership order, that was not done." As such, Vargason contends that the court abused its discretion and used the contempt power to effectively amend the receivership order to prohibit the use of the email address and applied that amendment retroactively.

¶ 46 Frankly, this argument is reminiscent of a child protesting punishment for pushing a sibling because the parent only expressly prohibited hitting. It is true the receivership order did not explicitly list every conceivable action that Vargason could possibly take which would violate the order, but use of an email address (designed, we note, to appear almost identical to his former dealership email address) for official correspondence in an attempt to represent and defend the company would reasonably be encompassed within the scope of the order's prohibition that he

"immediately cease *acting as an employee or agent* of the Receivership Defendants, including as a shareholder, member, owner, director, managing member, officer, [']independent contractor['], other employee or agent of any and all of the Receivership Defendants." We simply cannot deem unreasonable the court's finding that use of the email address would suggest to an objective party that Vargason had some authority, whether in a capacity as employee, agent, or otherwise, to act on the dealership's behalf. Further, the court did not amend the receivership order to prohibit the use of the email address and apply the amendment retroactively. Rather, the court found contempt based upon Vargason's actions in their entirety, and the court's specifications enjoining Vargason's future use of the email address and requiring that he turn over login information were simply conditions of the purge.

¶ 47                                C. Purge Order

¶ 48 Next, Vargason argues that the court's purge order exceeded the underlying order and, thus, is improper. Specifically, he asserts that the order to purge the motion to reconsider was too broad, as it encompassed his actions to defend himself personally. In addition, Vargason asserts that the purge concerning the email address is beyond the scope of the original contempt proceeding. For the following reasons, we disagree.

¶ 49 First, Vargason asserts that the court ordered him to send a letter informing the ALJ that he lacked authority to send the motion-to-reconsider letter, and the written order also required that he state in the letter that he was "without authority to send the [m]otion for [r]econsideration on December 6, 2021." Vargason contends that this language was too broad, as he retained the authority to send the motion on his own behalf. He asks that, if we affirm the contempt finding, we modify the purge to provide that the letter he writes state only that he was without authority to

send the motion to reconsider on the dealership's behalf. We decline Vargason's invitation to modify the purge order.

¶ 50    It is undisputed that, under the receivership order, Vargason retained authority to defend himself personally, but not the dealership. The record reflects the trial court was perfectly aware of this distinction. However, the issue is not whether Vargason had authority to send *a* motion to reconsider on his own behalf. The issue is whether he had authority to send *the* motion to reconsider that he actually sent on "December 6, 2021." That specific motion to reconsider did *not* express that Vargason wished to appear and defend himself personally; it expressed only a desire to appear and defend the company. Accordingly, we decline to order a modification of the purge.

¶ 51    Next, Vargason argues that the court also went beyond the receivership order when it instructed Vargason that, if he altered, deleted, or modified anything in the email account, he would "go to jail." According to Vargason, this transformed the proceeding into a discovery proceeding and put him in a position to possibly be sent to jail without due process if Vite believed that Vargason deleted anything. He notes that this very nearly happened on April 8, 2022, when, despite Vite's recognition that Vargason sent the required letter to the Department and had given access to the email account, he accused Vargason of making changes to the account. Vargason asserts that the purge prohibiting him from altering the account or deleting anything "made assumptions" about him that were not alleged in the petition nor presented in the hearing. Vargason notes that, once a purge has been accomplished, the contempt must cease. Here, he argues, there has been a "Sword of Damocles" hanging over his head for six months, without any ability to be heard if Vite or the receiver think Vargason "has not done enough." He concludes that, while Vite can file new, appropriate petitions, he should not be able to "hitch a ride" on the

April 1, 2022, order. He suggests that, to the extent the April 1, 2022, order authorizes the contempt to continue after the purge has been accomplished, it should be reversed or "limited to requiring Vargason to provide the login and access information for the email address." We again disagree.

¶ 52 Preliminarily, Vargason complains about actions that occurred after the April 1, 2022, contempt order issued, which are not encompassed within his notice of appeal and are not proper for our consideration here. We note, however, that, to the extent he raises concerns about due process and the need for Vite to file an appropriate motion for future relief and not "hitch a ride" on the April 1 order, the very hearing Vargason references on April 8, 2022, apparently came before the court on a new petition for rule to show cause.

¶ 53 We also disagree with the suggestion that the court could only order Vargason to turn over login credentials for the account, but not order him to refrain from modifying it. The court simply ordered the account be preserved, and the record of Vargason's overall conduct in these proceedings belies his contention that there was no basis for the court to order anything more than a turnover of login information. The court's comments reflect it has found Vargason's actions can be "fast and loose," and it did not find credible his explanations for his conduct. Vargason correctly notes that a contempt ends when a purge is accomplished, but the purge here reasonably required that he both turnover the account and not alter it. In sum, the court's order was not overbroad or an abuse of discretion and we will not modify it.

¶ 54                                   III. CONCLUSION

¶ 55     For the reasons stated, we affirm the judgment of the circuit court of Kane County.

¶ 56     Affirmed.